[Crim. No. 1128. Second Appellate District, Division Two.—November 13, 1924.]

## Matter of the Application of WILLIAM S. MASON for a Writ of Habeas Corpus.

[1] CONTEMPT—NOTICE OF ORDER VIOLATED—PRESENCE OF CONTEMNER —SERVICE OF NOTICE UNNECESSARY.—Service upon a person charged with contempt with written notice of the making of the order whose violation the court held to be contempt is not necessary where actual knowledge of the order is shown.

[2] EXECUTORS AND ADMINISTRATORS — CONFLICTING CLAIMS TO PROPERTY OF ESTATE—RIGHT OF ADMINISTRATOR TO DEAL WITH PROPERTY.—An administrator of an estate who claims to be the only heir to the estate of the deceased but whose claim is challenged by a surviving husband of the deceased in other undecided litigation could have no right to deal with the property of the estate other than as administrator and under the directions of the probate court pending the determination of such litigation and until a decree of distribution may have passed title to the property to said administrator.

[3] HABEAS CORPUS—JURISDICTION—EVIDENCE.—Upon a writ of *habeas corpus* the review of the evidence is limited to an inquiry as to whether or not there is any substantial evidence of the jurisdictional facts. If there is such evidence of those facts in the record it cannot be said that the lower court acted without jurisdiction.

[4] CONTEMPT—ORDER DIRECTING ADMINISTRATOR TO DELIVER ESTATE PROPERTY—VIOLATION OF JURISDICTION—EVIDENCE.—In this *habeas corpus* proceeding to secure the release of an administrator of an estate who was adjudged guilty of contempt for violation of an order directing him to deliver the property and assets of the estate in his possession or under his control over to another appointed by the court, the evidence sufficiently establishes the jurisdiction of the superior court to render the judgment of contempt.

1. See 6 R. C. L. 532; 5 Cal. Jur. 915.

2. See 11 R. C. L. 174; 11 Cal. Jur. 1053.

3. *Habeas corpus* to obtain relief from imprisonment for contempt, notes, 87 Am. St. Rep. 179; 11 Ann. Cas. 1056; 1 L. R. A. (N. S.) 1142. See, also, 6 R. C. L. 540; 5 Cal. Jur. 957.

4. Power to punish for contempt, note, 12 Am. Dec. 178. See, also, 5 Cal. Jur. 958.

[5] ID.—ACTS CONSTITUTING CONTEMPT.—A probate court having ordered the administrator of an estate to deliver to another party the property and assets of the estate in his possession or under his control, the removal from the control of the administrator or his refusal to transfer to said party money and jewelry belonging to the estate constituted contempt of court.

[6] ID.—BURDEN OF PROOF.—In such habeas corpus proceeding, the burden was upon the petitioner to purge himself of contempt by showing his inability to comply with the court's order, and that the inability was not occasioned by his own act.

[7] ID.—SENTENCE—IMPRISONMENT—FINE—CONFINEMENT IN DEFAULT OF PAYMENT.—A sentence of imprisonment for contempt for five days and a fine with the further requirement that the contemner be confined one day for each two days of such fine until it is paid is valid.

[8] ID.—JUDGMENT OF CONTEMPT—SUFFICIENCY OF.—In such proceeding, the contention of petitioner that there is no adjudication that he is guilty of contempt in failing to transfer or deliver or turn over a stated amount of money or the diamonds or the jewelry, the only property the court finds that the petitioner has not delivered, is answered by the wording of the judgment that in his failure to turn over to a party designated by the court the property and assets of the estate in his possession, petitioner "is in contempt of court."

---

(1) 13 C. J., p. 18, sec. 22. (2) 18 C. J., p. 881, sec. 138. (3) 29 C. J., p. 171, sec. 194. (4) 13 C. J., p. 77, sec. 112. (5) 13 C. J., p. 9, sec. 12. (6) 13 C. J., p. 77, sec. 111. (7) 13 C. J., p. 89, sec. 135. (8) 13 C. J., p. 81, sec. 121.

PROCEEDING in Habeas Corpus to secure release from custody on a charge of contempt of court. Writ dismissed; petitioner remanded.

The facts are stated in the opinion of the court.

George D. Collins, Jr., for Petitioner.

Oliver O. Clark, James F. McBryde and Eugene J. Wix for Respondent.

CRAIG, J.—Petitioner, under the writ of *habeas corpus* issued herein, seeks to obtain his release from imprisonment

---

5. See 6 R. C. L. 502; 5 Cal. Jur. 914.
6. See 5 Cal. Jur. 945.
7. See 6 R. C. L. 522; 5 Cal. Jur. 931.

under a judgment of contempt of the superior court of Los Angeles County.

As administrator of the estate of Emma M. Bond, deceased, Mason was ordered to show cause before the trial court why he should not file an account and be discharged as administrator, and upon a hearing his letters were suspended pending the filing of a report. Subsequently he filed an account and report, which was later amended. Evidence was offered at the hearing thereon, and the trial court held that both accounts were untrue, that petitioner had wasted and mismanaged the estate, and that he had endeavored to conceal funds belonging to the same. An order was then made removing petitioner as administrator and directing that he deliver all the property and assets of the estate to the Citizens Trust and Savings Bank, which was contemporaneously appointed special administrator, and April 2, 1924, was set as the date upon which petitioner should appear before the court for the purpose of rendering a full accounting and making such transfer. He did not appear at the time set therefor, and the matter was continued to the fourth day of April, 1924, and his counsel notified of the continuance, at which later date Mason appeared by counsel but not in person.

An affidavit was filed reciting the foregoing facts, and that petitioner had not delivered to the special administrator the property and assets of said estate; that it appeared that petitioner had appealed from the order of March 14th removing him from his trust, appointing a special administrator, and directing delivery of all the property and assets in his possession or under his control to the latter; and that the court had appointed the Citizens Trust and Savings Bank special administrator with all the powers of a general administrator pending the appeal.

Petitioner avers that the trial court thereupon ordered his arrest, and that he be brought into court forthwith; that no bail was set or indorsed upon the order or warrant; that he was arrested in San Francisco and brought to Los Angeles; that his counsel arrived at Los Angeles ahead of him and notified the sheriff's office that he desired to appear for petitioner, and also went to the courtroom previous to petitioner's arrival, and that it was well known to the trial judge that his counsel was waiting to be notified of the

hearing. He asserts that on June 10, 1924, he was brought into court at once upon arrival, and that he demanded that his counsel be called, but that he was denied this privilege, or any opportunity to prepare or defend, and was compelled against his will to be sworn and examined; and that upon his testimony alone he was convicted and sentenced to the county jail for five days, to pay a fine of $300, and in default of payment that he be confined one day for each two dollars of such fine. On June 12th petitioner moved to vacate the order last mentioned, upon the ground that it was made *ex parte,* and denied him constitutional rights; this motion was not specifically denied, but the hearing was reopened and evidence was introduced; thereupon the same order was made as before, with the additional provision that petitioner be confined in the county jail until he should make the delivery and transfers previously ordered.

If the representations contained in the briefs filed by petitioner's counsel were supported by the record there could be no question concerning his client's right to be discharged from custody, but in a number of instances the statements are widely erroneous. For example, it is contended that the order whereby the Citizens Trust and Savings Bank was appointed special administrator on March 14th was annulled by the supreme court on April 16th for want of jurisdiction (*Estate of Bond,* 193 Cal. 482 [225 Pac. 450]), and that he cannot be held in contempt for a failure or refusal to comply therewith. The supreme court did not annul the order of March 14, 1924, revoking petitioner's letters of administration and ordering that he deliver all the property and assets of the estate in his possession or under his control to the Citizens Trust and Savings Bank. On the contrary, the opinion in that proceeding expressly held that since the order directing that the property and assets of the estate be brought into the jurisdiction and placed in possession of the Los Angeles bank "did not designate that the said Citizens Trust and Savings Bank of Los Angeles was to be delivered said assets in its capacity of such administrator, but merely directed such delivery to it without indicating in what particular trust capacity the said corporation was to hold and keep such assets" (*Estate of Bond,* 193 Cal. 482 [225 Pac. 450]), the order appointing the bank administrator, and the order for delivery, were not

interdependent. The supreme court expressly refrained from acting upon any question raised in various attacks upon the order of March 14th, other than the portion relating to said appointment.

[1] With reference to the claim that because petitioner was never served with a written notice of the making of the order whose violation the court held to be contempt, it is sufficient to say that such service is not necessary where actual knowledge of the order is shown. (*Mitchell* v. *Superior Court,* 163 Cal. 423 [125 Pac. 1061]; *Ex parte Cottrell,* 59 Cal. 417; *Crouse* v. *Superior Court,* 28 Cal. App. 625 [153 Pac. 723].) Petitioner admitted to the court that he was present when the order of March 14th was made.

At the hearing on June 10, 1924, Mason was asked to be sworn, and without objection took the oath and testified at length; subsequently he asked for his counsel and the court examined attachés of the superior court who testified that petitioner's counsel had been in and out of the courtroom during the forenoon, and had stated that he understood the arrest had been made and that he expected petitioner to appear, but that he had left before noon and had not returned. The court thereupon proceeded with further interrogation of the petitioner as to the property of the estate, from which it appears that he withdrew all the funds, diamonds, and jewelry, which he transferred to Upper Lake, in Lake County, where he opened an account in a bank, but he denied that he could remember its name; he placed some of the money therein, and the balance in a safe-deposit box; that notwithstanding the orders of the court he had withdrawn funds therefrom and invested about $25,000 in a resort or hotel business, purchased furniture upon installments, and spent some of the money on himself; he did not inform the bank that the funds were property of an estate, made all purchases in his own name, and kept no books. It is contended that the first hearing was precipitate and unfair; however, upon application the matter was reopened, evidence was introduced, and petitioner was committed and fined as before.

[2] We are informed by his petition and brief that he is the only heir to the estate of Emma M. Bond, deceased, but it clearly appears that this claim upon his part is challenged. The decedent left a surviving husband, who is

claiming one-half of the estate, which presents a question involved in other litigation yet undecided, pending the determination of which and until a decree of distribution may have passed title to the property to Mason he could have no right to deal with it other than as administrator and under the directions of the probate court.

Many other contentions of petitioner are equally unfounded. He argues that since the order of March 14th directed that he turn over all the property and assets in his possession *or* under his control, that it is meaningless; that some of the estate is in Colorado, beyond his control, and that he was never appointed in that state; that the affidavit supporting these proceedings is insufficient in that it does not allege that he is able to make the transfer, or that he violated the court's order willfully. The affidavit alleges that the orders were made in petitioners presence, and his utter disregard thereof; the order in question in this proceeding was framed in the alternative, and petitioner admitted that a large sum of money, as well as jewelry, were in his possession and under his control, and that he had spent some for personal uses; that the remainder was gone.

We need not consider the claim that the trial court committed error in requiring Mason to testify on March 14th in the absence of his counsel, because exclusive of his own testimony there is ample evidence of his wanton and willful disregard of the orders of the probate court. **[3]** Of course, upon a writ of *habeas corpus* the review of the evidence is limited to an inquiry as to whether or not there is any substantial evidence of the jurisdictional facts. If there is such evidence of those facts in the record it cannot be said that the lower court acted without jurisdiction. (*McFarland et al.* v. *Superior Court,* 194 Cal. 407 [228 Pac. 1033]; *Strain* v. *Superior Court,* 168 Cal. 216 [Ann. Cas. 1915D, 702; 142 Pac. 62]; *Ex parte Clark,* 110 Cal. 405 [42 Pac. 905].) **[4]** The inquiry in this proceeding in so far as the facts are concerned can only extend to such as bear upon the jurisdiction of the superior court to render the judgment of contempt. (*Ex parte Rush,* 60 Cal. 5; *Ex parte Hollis,* 59 Cal. 405; *People* v. *O'Neill,* 47 Cal. 109; *In re Selowsky,* 189 Cal. 331 [208 Pac. 99]; *Ex parte Levin,* 191 Cal. 207 [215 Pac. 908].) This is sufficiently established without

resort to Mason's own testimony given on June 10th, by the following facts shown by the record. After petitioner's appointment and qualification as administrator he withdrew from depositaries in Los Angeles County large sums of money, and one W. G. Wilbur petitioned the lower court for an order requiring Mason to appear, account, and report, and to show cause, if any he had, why his letters of administration should not be revoked. The order was made, returnable on November 26, 1923, but petitioner did not appear, except by counsel, who filed in his behalf an unsworn account. The letters were thereupon suspended pending his appearance, and the hearing continued to each of the following successive dates on account of petitioner's absence: December 12, 1923; January 8, 1924; February 1, 1924; February 29, 1924; March 13, 1924. On this latter date an amended account was filed, and the matter was again continued to March 14, 1924, when the testimony shows, and his counsel admitted for the record, that he was present in open court; and after hearing as above mentioned, the order in question was entered in the presence of petitioner and his counsel.

On March 31, 1924, a second amended account was filed. Petitioner accounted in these various documents having received cash of the estate in the sum of $25,277.87; diamonds and jewelry appraised at about $1,465; a promissory note of a Denver corporation for $4,000; a trust deed on Denver property, and a certificate representing 4,000 shares of the capital stock of said corporation, both given as security for said note; a contract of purchase, adjustment agreement and abstract of title. Gifford K. Kirsch of the Citizens Trust and Savings Bank testified that on April 4, 1924, that bank received from petitioner's counsel the papers and documents belonging to the estate relating to Colorado property before mentioned, but that the administrator had not transferred or delivered to them any money or property since March 14, 1924.

From this it appears that within a period of about five months petitioner during his administration received large amounts of money as trustee of the estate, and as an officer of the court; that one day before the order of March 14th petitioner's amended account recited that "there still re-

mains in his possession'' the $25,277.87, and the diamonds and jewelry worth $1,465. Fifteen days after the said order was made in the petitioner's presence he filed another account admitting that he still had possession of the diamonds and jewelry; he therein states that he received the $25,277.87, but accounts for no part of it. Petitioner's argument, therefore, that the trial court was attempting on March 14th to compel him to transfer property which he did not have at the time is not within the range of possibility. **[5]** It is clear that he removed from his control or refused to transfer to the Citizens Trust and Savings Bank the money and jewelry subsequently to March 14th, either of which acts obviously constituted contempt of court. **[6]** The burden was upon the petitioner to ''purge himself of contempt by showing his inability to pay it, and that the inability is not occasioned by his own act, for the purpose of avoiding payment.'' (*In re Spencer,* 83 Cal. 465 [17 Am. St. Rep. 266, 23 Pac. 397].)

**[7]** Petitioner's contention that the sentence of imprisonment for five days and a fine with the further requirement that he be confined one day for each two dollars of such fine until it was paid is void, is untenable. (*In re Jorgensen,* 19 Cal. App. 217 [124 Pac. 1055].) **[8]** His contention that there is no adjudication that he is guilty of contempt ''in failing to transfer or deliver or turn over the $24,000 or the diamonds or the jewelry, the only property the court finds he has not delivered,'' is answered by the wording of the judgment that ''in his failure to turn over to Citizens Trust and Savings Bank the property and assets of said estate of Emma M. Bond in his possession, said William S. Mason is in contempt of court.''

The arguments on behalf of petitioner in this proceeding are hypertechnical. Many other points attempted to be made are unworthy of discussion. Open defiance of the orders of courts and disregard of the interests and rights of litigants and bondsmen cannot be tolerated by our tribunals. The power and duty of courts to punish for such infractions ''is a doctrine which is admitted in all its rigor by American courts everywhere, and does not need the support of foreign authorities, based upon the fiction that the majesty of the king, represented in the persons of the judges, is always present in court. It is founded upon the principle—which

is coeval with the existence of the court, and as necessary as the right of self-protection—that it is a necessary incident to the execution of the powers conferred upon the court, and is necessary to maintain its dignity, if not its very existence." (*In re Shortridge*, 99 Cal. 526 [37 Am. St. Rep. 78, 21 L. R. A. 755, 34 Pac. 227].)

The writ is dismissed and the petitioner remanded.

Finlayson, P. J., and Works, J., concurred.